### United States District Court
### District of Massachusetts

```
_____
                               )
UNITED STATES OF AMERICA,       )
                               )
          v.                    )
                               )        Criminal No.
NELSON ARROYO,                  )        13-10011-NMG
                               )
          Defendant.            )
_____)
```

#### MEMORANDUM & ORDER

**GORTON, J.**

This case arises out of an investigation of the drug trafficking activities of Defendant Nelson Arroyo ("Arroyo" or "defendant") in Massachusetts.  Arroyo is charged with Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine in violation of 21 U.S.C. § 846 and Possession with Intent to Distribute Cocaine in violation of 21 U.S.C. § 841(a)(1). Pending before the Court are Arroyo's motions to suppress.

Arroyo seeks to suppress evidence pertaining to two separate incidents.  First, he seeks to suppress physical evidence obtained through two searches of an apartment in North Reading, Massachusetts in May, 2012.  Second, he seeks to suppress incriminating statements made to and physical evidence seized by law enforcement officers during a December, 2012, search of a property in Lowell, Massachusetts.

-1-

I.    <u>Background</u>

   A.    **May, 2012 Searches**

On the evening of May 22, 2012, the North Reading Police Department received an anonymous call reporting a possible domestic disturbance at 107 Lowell Road, Apartment 201, in North Reading ("the North Reading apartment").  The caller, who stated that he lived two apartments away from Apartment 201, reported hearing a woman and child screaming and the sounds of fighting, crying, and things breaking.  He stated that he had been hearing these sounds for about 25 minutes and that he did not want to go into the hallway.

When police arrived at the North Reading apartment, they noticed a woman's shoe and a small amount of a white powdery substance on the floor of the hallway outside of the apartment. They also noticed that the front door of the apartment was partially open but did not bear any signs of forced entry.  The officers knocked and announced their presence.  When they received no response, they decided to enter the apartment to check for victims of the reported altercation.

Upon entering, they discovered two brick-shaped packages wrapped in clear plastic lying close to the door.  They also found a woman's shoe that matched the shoe in the hallway, a flattened cardboard box, an envelope on top of the box on which someone had written Arroyo's name and papers scattered across the

-2-

floor.  The officers continued to search the apartment for victims.  They found that one bedroom door appeared to have been forced open despite being locked with a deadbolt but there were no people in the apartment.

Based on these observations, the officers became concerned that the apartment's occupants had been abducted or the victims of a violent crime.  They looked for evidence of the identity of the residents and found mail addressed to "Niurca Ferreras" and a bottle of prescription medicine made out to Arroyo.

More North Reading Police officers arrived to help with the investigation.  Two officers canvassed the area in an attempt to locate the anonymous caller and other witnesses.  They spoke with neighbors who said that they had not heard a disturbance. Another officer, Detective Thomas Encarnacao, observed the brick-shaped packages and determined that, based on his training and experience, they appeared to contain narcotics.

Early the next morning, Detective Encarnacao applied for and was granted a Massachusetts search warrant.  Detective Encarnacao submitted an affidavit with his application that described the events of May 22-23 and stated his belief that, based on his training and experience, the brick-shaped objects were packaged in a manner frequently used by drug traffickers to compress and conceal narcotics.  The issued warrant permitted officers to search for and seize evidence of drug distribution, evidence that

-3-

a violent crime had occurred and evidence of who had custody or control over the apartment.

After obtaining a warrant, agents from the DEA and North Reading Police Department searched the North Reading apartment. They recovered approximately eleven kilograms of cocaine, a smaller amount of marijuana and drug distribution paraphernalia such as scales, a vacuum sealer and a money counter.  They also discovered an undisclosed number of documents, including income tax forms, bills, leasing agreements, vehicle titles, earning statements and checkbooks.  The police report states that "some" of these documents were "addressed or listed to" four different individuals, including Arroyo, but does not specify which documents were specifically associated with Arroyo.

**B.   December, 2012 Custodial Interrogation and Search**

On December 7, 2012, Lieutenant Thomas Quin, a member of a Massachusetts State Police team conducting surveillance in the area, observed several events taking place at 116 Jewitt Street in Lowell, Massachusetts ("the Lowell apartment").  The Lowell apartment is owned or leased by Yulenny Lantigua, the defendant's girlfriend.  First, Edgardo Rivera arrived carrying a tan-colored satchel.  Arroyo met Rivera outside and brought him into the house.  At approximately 11:57 AM, Lantigua parked her minivan in front of the house.  Arroyo removed several bags from the minivan and Rivera got into the front seat.  Rivera was carrying the tan

satchel he had brought into the house earlier.

State Trooper Steve Gondolla pulled the minivan over in
Lowell, presumably on a tip or instructions from Lieutenant Quin
or another member of the surveillance team.  He searched the
satchel with Lantigua's permission and found that it held a large
amount of currency.  Trooper Gondolla informed Lieutenant Quin of
his findings and continued to speak with Lantigua.  Lantigua told
Trooper Gondolla that Arroyo did not live at her house and gave
written consent for officers to search the property for drugs,
money, weapons and contraband.

At or around the same time that Trooper Gondella obtained
Lantigua's consent, Lieutenant Quin returned to the Lowell
apartment.  He and other officers entered the house through an
open side door.  Lieutenant Quin and another officer detained and
handcuffed Arroyo and took him to the basement.  They told Arroyo
that they were investigating his drug trafficking.  They asked
Arroyo if he lived at that residence and, when he told them that
it was his girlfriend's house and that he lived elsewhere, they
asked him if he would consent to a search of the house.  Arroyo
replied that, although he had no objection, he could not give
permission because it was not his house.

After Arroyo denied that he had authority to consent to a
search, the officers' asked him if he had any weapons or drugs in
the house.  According to the police report, Arroyo admitted that

-5-

he had a handgun in the house but no drugs.  He led the officers
to an upstairs bedroom and showed them where he had hidden a
handgun.  The officers seized the gun and took Arroyo back to the
basement.  After removing his handcuffs, they questioned him
about his drug trafficking activities and agreed to meet with him
at a later date to discuss whether he would cooperate in their
investigation.  At no point during that interaction was Arroyo
given <u>Miranda</u> warnings or told that he was under arrest.

## II.  <u>Analysis</u>

### A.  Evidentiary Hearing

The Court declines to hold an evidentiary hearing on either
of the motions because Arroyo has failed to make a "sufficient
threshold showing" that material facts are in dispute which
cannot reliably be resolved on the paper record and which would
entitle him to the requested relief if resolved in his favor. <u>See</u>
<u>United States</u> v. <u>Staula</u>, 80 F.3d 596, 603 (1st Cir. 1996)
(citations omitted); <u>see also</u> <u>United States</u> v. <u>Brown</u>, 621 F.3d
48, 57 (1st Cir. 2010).  To be entitled to an evidentiary
hearing, a defendant must "allege facts sufficiently definite,
specific, detailed, and nonconjectural" from which the Court may
conclude that a substantial claim is presented. <u>Brown</u>, 621 F.3d
at 57 (citation omitted).  A defendant's affidavit alone is not
cause for an evidentiary hearing if it contains conclusory
allegations, <u>United States</u> v. <u>Southard</u>, 700 F.2d 1, 10 (1st Cir.

1983), and makes no offer of proof with respect to any other facts that might support those allegations, <u>United States</u> v. <u>Calderon</u>, 77 F.3d 6, 9 (1st Cir. 1996).

In this case, an evidentiary hearing is unnecessary.  In his affidavits submitted in support of these motions, Arroyo states legal conclusions such as "[t]here were no exigent circumstances that would justify this warrantless search" and "I have an expectation of privacy in this address" but offers no factual support for those claims or an alternative narrative to the facts in the police report.  In short, Arroyo has failed to show that material facts are in dispute and a hearing would not assist the Court in resolving his claims.

### B.   May, 2012 Searches

Arroyo challenges the searches of the North Reading apartment on two grounds.  First, he argues that the initial warrantless search was not justified by exigent circumstances. Second, he argues that the magistrate judge lacked probable cause to issue a search warrant.  Neither argument is persuasive.

As an initial matter, it is not clear that Arroyo has standing to challenge these searches.  He states that he has an "expectation of privacy" in the North Reading apartment but does not offer any proof that he owned, possessed, controlled or used the apartment. <u>See</u> <u>United States</u> v. <u>Aguirre</u>, 839 F.2d 854, 856-57 (1st Cir. 1988).  Nevertheless, the Court assumes that he meets

the threshold standing requirement for the purposes of this motion and proceeds to consider the merits of his challenge.

### 1.   Exigent Circumstances

Arroyo argues that there were no exigent circumstances that would permit warrantless entry into the North Reading apartment. That argument fails because the initial warrantless search was justified by the emergency doctrine, a subset of the exigent circumstances exception.

The emergency doctrine allows police to enter a residence without a warrant if they "reasonably believe that swift action is required to safeguard life or prevent serious harm." United States v. Martins, 413 F.3d 139, 147 (1st Cir. 2005).  In order to rely upon the doctrine, the government must show

> a reasonable basis, approximating probable cause, both
> for the officers' belief that an emergency exists and
> for linking the perceived emergency with the area or
> place into which they propose to intrude.  The
> requisite inquiry must be undertaken in light of the
> totality of the circumstances confronting the officers,
> including, in many cases, a need for an on-the-spot
> judgment based on incomplete information and sometimes
> ambiguous facts bearing upon the potential for serious
> consequences.

Id. (internal citations omitted).  In addition, the scope of the warrantless search must be "strictly circumscribed by the exigencies which justify its initiation." Mincey v. Arizona, 437 U.S. 385, 393 (1978) (quoting Terry v. Ohio, 392 U.S. 1, 26 (1968)).

-8-

The initial search of the North Reading apartment meets this standard.  The police knew that someone who claimed to be a neighbor reported hearing a woman and child screaming as well as the sounds of people crying and things breaking.  They did not hear any of those sounds when they arrived at the apartment but they did find the door slightly open and received no response when they knocked and announced themselves.  That evidence, along with the single woman's shoe lying near the door in the hallway, was consistent with the caller's report that there had been an altercation at the apartment.  While the evidence may not have been conclusive, the officers had a reasonable basis to believe that there had been a violent occurrence and victims in need of immediate assistance might be inside of the apartment. Cf. Tierney v. Davidson, 133 F.3d 189, 197 (2d Cir. 1998) (finding exigent circumstances justified search when police responded to 911 call reporting a "bad" domestic dispute, spoke with several neighbors who reported that shouting had ended shortly before the police arrived and observed a broken window pane when they approached the house).

Arroyo argues that the lack of signs of forced entry "confirmed" that the caller's report was "blatantly false" and that the police had no reason to believe that there might be victims inside the apartment.  That argument ignores the nature of the caller's report.  While the police may have had other

-9-

reasons to doubt the caller's veracity, including his insistence on anonymity, the fact that they did not observe signs of forced entry had little if any bearing on whether a domestic dispute had taken place inside of the apartment.

Finally, the subsequent search was "strictly circumscribed by the exigencies which justif[ied" its initiation." See Mincey, 437 U.S. at 393.  Immediately upon entering the apartment, the police observed additional evidence that a struggle had taken place, including a shoe that matched the shoe found in the hallway and scattered papers.  They searched the rest of the apartment for possible victims and discovered that a bedroom door had been forced open despite being locked with a deadbolt, a fact which further confirmed their belief that a violent altercation had occurred.  Once they confirmed that no victims were in the apartment, officers sought evidence of the identity of the apartment's residents, reasonably believing that they may have been abducted or were the victims of a violent crime.

### 2.    Probable Cause for the Issued Search Warrant

Arroyo also claims that the issued search warrant was not supported by probable cause.  That argument is unavailing.

Probable cause exists when there is a "fair probability that contraband or evidence of a crime will be found at a particular place." Illinois v. Gates, 462 U.S. 213, 238 (1983).  A prior judicial determination of probable cause is entitled to great

deference by the reviewing court. Id.  In considering the sufficiency of an affidavit, a court must determine whether the "totality of the circumstances" presented demonstrate probable cause. United States v. Strother, 318 F.3d 64, 67 (1st Cir. 2003).

Arroyo argues that there was no corroborating evidence to support Detective Encarnacao's "educated guess" that there was evidence of trafficking in heroin and cocaine inside the apartment.  This is simply not true.  The police observed brick-shaped packages that appeared to be narcotics in plain view while they were lawfully inside the North Reading apartment. See Texas v. Brown, 460 U.S. 730, 739 (1983) (describing the plain view doctrine).  In his affidavit, Detective Encarnacao stated that he personally observed the packages and believed that, as a result of his training and experience, they were packaged in a manner frequently used by drug traffickers to compress and conceal narcotics. See id. (finding that officer's training and experience gave him probable cause to believe that opaque balloon contained narcotics).  As a result, Detective Encarnacao had probable cause to believe that a search would produce additional evidence of drug possession and distribution.  Arroyo's contention that officers needed to observe additional evidence of drug distribution such as scales or cutting agents in order to have probable cause to search the apartment lacks any legal

support.

Arroyo's other arguments are also without merit.  For example, he contends that the evidence of the damaged doorframe could not be used to establish probable cause that a violent crime had taken place because it was impossible to know from the affidavit when and how the damage occurred.  That argument misses the point.  The standard for probable cause is not certainty that every fact alleged in the affidavit will later be found accurate, but a "fair probability that contraband or evidence of a crime will be found at a particular place" based on the totality of the circumstances. See Gates, 462 U.S. at 238.  The magistrate judge was permitted to draw reasonable inferences about the significance of the shattered doorframe in considering whether the totality of the circumstances gave rise to probable cause to search the North Reading apartment.

### C.   December, 2012 Custodial Interrogation and Search

Arroyo also moves to suppress the introduction into evidence of his December 7, 2012 statements and the handgun discovered at the Lowell apartment.  His claims are not particularly clear or well-developed.  First, he moves to suppress the statements he made to police about the handgun and his drug trafficking activities on the grounds that they were made during a custodial interrogation conducted without Miranda warnings. Second, he moves to suppress the handgun because it was discovered as a

result of the incriminating statements made during a search
conducted without a warrant.

### 1.    Motion to Suppress Arroyo's Statements to Police

The Court will allow Arroyo's motion to suppress his
incriminating statements after officers seized the handgun
because officers subjected Arroyo to a custodial interrogation
without issuing Miranda warnings.  His statements about the
handgun, however, fall under the public safety exception and are
admissible.

The obligation to warn an individual of his Miranda rights
arises when that individual has been "taken into custody or
otherwise deprived of his freedom by the authorities in any
significant way." Miranda v. Arizona, 384 U.S. 436, 444 (1966).
Where, as here, a defendant was questioned by police but not
arrested, the district court looks to the totality of the
circumstances surrounding the questioning and determines whether
a "reasonable person would have felt he or she was not at liberty
to terminate the interrogation and leave." United States v.
Mittel-Carey, 493 F.3d 36, 39 (1st Cir. 2007) (quoting Thompson
v. Keohane, 516 U.S. 99, 112 (1995)).  Among the factors guiding
this analysis are the location of the questioning, the number of
officers, the degree of physical restraint and the duration and
character of the interrogation. Id.  Among these factors, the
degree of physical restraint carries the most weight. Id. at 40.

-13-

There is no question that Arroyo was subjected to a custodial interrogation on December 7, 2012.  The government does not dispute that 1) Arroyo was in custody from the moment the officers entered the Lowell apartment and handcuffed him, 2) he made incriminating statements in response to the officers' questions or 3) he was never given any <u>Miranda</u> warnings.  As a result, his incriminating statements made after the officers seized the handgun are inadmissible as part of the prosecution's case-in-chief.

Arroyo's statements about the handgun, however, fall within the "public safety" exception to <u>Miranda</u> and are therefore admissible.  The public safety exception permits officers to question a suspect without first providing <u>Miranda</u> warnings in situations where there is an "objectively reasonable need to protect the police or the public from any immediate danger associated with a weapon." <u>New York</u> v. <u>Quarles</u>, 467 U.S. 649, 659 n.8 (1984).  In such cases, the defendant's statement and physical evidence uncovered as a result of that statement are admissible. <u>See</u> <u>United States</u> v. <u>Newsome</u>, 475 F.3d 1221, 1226 (11th Cir. 2007); <u>United States</u> v. <u>Estrada</u>, 430 F.3d 606, 610 (2d Cir. 2005).

For the exception to apply, the interrogating officer must

> have reason to believe (1) that the defendant might have (or recently have had) a weapon, and (2) that someone other than police might gain access to that weapon and inflict harm with it.

United States v. Williams, 483 F.3d 425, 428 (6th Cir. 2007).
Factors bearing on this analysis include whether officers knew or
suspected that other people were present and unaccounted for and
whether they secured the area prior to questioning the suspect. See
Estrada, 430 F.3d at 613; United States v. Reyes, 353 F.3d 148, 153
(2d Cir. 2003); United States v. Williams, 181 F.3d 945, 953-54
(8th Cir. 1999).  Evidence that the suspect is a drug trafficker
may give rise to a reasonable belief that he or she is armed or
stores weapons on the premises. See Estrada, 430 F.3d at 613 ("We
have often recognized that firearms are tools of the drug trade
that are commonly kept on the premises of major narcotics
dealers.").

The Court finds that, under these circumstances, there was an
"objectively reasonable need to protect the police or the public
from any immediate danger associated with a weapon." Quarles, 467
U.S. at 659 n.8.  First, the officers suspected that Arroyo was a
drug trafficker and therefore it was reasonable to infer that he
kept weapons on the premises. See Estrada, 430 F.3d at 613.
Second, even though Arroyo was handcuffed and could not access a
weapon, the officers had not secured the premises or confirmed that
Arroyo was alone. See Reyes, 353 F.3d at 153; Williams, 181 F.3d at
953-54.  Third, while the Court is concerned that officers delayed
asking about weapons until after they took Arroyo to the basement
and tried to obtain his consent to a search, the test is whether it

was objectively reasonable to believe that pre-<u>Miranda</u> questioning
was necessary under the circumstances and not whether the officers
subjectively believed that they were in danger. <u>See</u> <u>United States</u>
v. <u>Newtown</u>, 369 F.3d 659, 677-78 (2d Cir. 2004) ("The public safety
exception does not depend upon the subjective motivation of the
questioning officer . . . ."). As a result, the Court will not
suppress either Arroyo's statements about the gun or the gun itself
on the grounds that officers failed to give <u>Miranda</u> warnings. <u>See</u>
<u>Newsome</u>, 475 F.3d at 1226.

### 2. Motion to Suppress the Handgun

Arroyo also contends that the handgun should be suppressed
because officers did not have a warrant to search the Lowell
Apartment. The Court need not reach the merits of his Fourth
Amendment claim because the handgun is admissible under the
inevitable discovery doctrine.

The inevitable discovery doctrine provides that evidence
obtained through an illegal search is nevertheless admissible if
the "prosecution can establish, by a preponderance of the
evidence, that the information ultimately or inevitably would
have been discovered by lawful means." <u>United States</u> v. <u>D'Andrea</u>,
648 F.3d 1, 12 (1st Cir. 2011) (quoting <u>Nix</u> v. <u>Williams</u>, 467 U.S.
431, 444 (1984)). In order for the doctrine to apply, the lawful
means must be "truly independent" from the Fourth Amendment
violation and it must also be "truly inevitable" that officers

would both employ the lawful means and discover the evidence in question by using those means. Id. Further, applying the exception should not provide an incentive for future police misconduct or significantly weaken constitutional protections. Id.

In this case, the lawful means, Lantigua's consent to a search, were truly independent from any unconstitutional police conduct. Trooper Gondolla did not exploit the unlawfully discovered evidence in order to obtain her lawful consent because the officers discovered the handgun at about the same time that he was speaking to Lantigua. Similarly, his decision to seek her consent was "inevitable" because he obtained her consent at approximately the same time that his fellow officers questioned Arroyo and found the gun. In other words, he would have asked for her consent whether or not the other officers decided to enter the Lowell apartment and interrogate Arroyo. Discovering the handgun was also inevitable because Lantigua consented to a comprehensive search for drugs, weapons, money and contraband. Finally, applying the inevitable discovery doctrine does not provide an incentive for police misconduct in the future because officers who use unconstitutional means to obtain evidence cannot be certain that a third party will give lawful consent to search for the same evidence.

**ORDER**

In accordance with the foregoing, defendant's motions to suppress (Docket No. 21) are, with respect to defendant's incriminating statements after officers seized the handgun on December 7, 2012, **ALLOWED,** but are, in all other respects, **DENIED.**

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated September 17, 2013

-18-